UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PATRICE FORTUNE,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security Administration,

    Defendant.

CASE NO.   C04-5818RBL

REPORT AND RECOMMENDATION

Noted for December 23, 2005

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). This matter has been briefed, oral argument was heard on June 22, 2005, and after reviewing the record, the undersigned recommends that the Court affirm the Administration's final decision for further consideration.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Patrice Fortune, did not complete High School. She took some classes to complete her GED and she also took classes to be a cook. She worked as a cook at McDonald's, Microsoft, and her church. She last worked in 2001, at a construction site, but quit because of problems with her left ankle.

Plaintiff has alleged disability since October 1, 2001 due to depression, bipolar disorder, post traumatic stress, anger problems, psychosis, left ankle injury, back and neck pain and numb hands. She filed an application fo Social Security Income benefits on march 6, 2002. Her claim was denied on April

REPORT AND RECOMMENDATION
Page - 1

10, 2004. The Administrative Law Judge ("ALJ") found that Ms. Fortune's impairments precluded past relevant work, but that she could still work as an assembler.

Plaintiff now brings the instant action pursuant to 205(g) of the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of the defendant's final decision denying plaintiff's application for disability insurance benefits. Plaintiff specifically contends: (1) the ALJ improperly made an implicit Step-two determination; (2) the ALJ rejected the opinions of examining specialists without providing clear, convincing or legitimate reasons for doing so; (3) the ALJ's credibility analysis of Ms. Fortunes testimony was not supported by substantial evidence; (4) the ALJ failed to consider any of the limitations supported by lay witness statements; and (4) the ALJ's RFC and hypothetical question posed to the Vocational Expert were incomplete.

## DISCUSSION

The Commissioner's decision must be upheld if the ALJ applied the proper legal standard and the decision is supported by substantial evidence in the record. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, this Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

The burden is on the claimant to prove that she is disabled within the meaning of the Social Security Act. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 423(d)(1)(A). A claimant is disabled only if her impairments are of such severity that she is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. See 42 U.S.C. §§ 423(d)(2)(A), 1382c (a)(3)(B).

In the case at hand, the ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. See 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date (Tr. 24, 33 Finding 1). See 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b). At step two, the ALJ found that Plaintiff had the following combination of severe impairments: Depression, drug and alcohol abuse (DAA), bilateral carpal tunnel syndrome, neck and back problems, left ankle injury - status post surgeries, and asthma (Tr. 29-30, 33 Finding 2). See 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). At step three, the ALJ found that Plaintiff's impairments, alone or in combination, did not meet or equal the requirements of a listed impairment (Tr. 30, 33Finding 3). See 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d). The ALJ determined that Plaintiff had retained the following residual functional capacity (RFC): lift and carry 10 to 20 pounds 2/3 of an 8 hour day; stand 2/3 of an 8 hour day; travel ½ the time in an 8 hour day; no limitation in sitting, moving about, handling objects, hearing, speaking, and seeing; a limitation to simple, repetitive tasks; and, to minimize stress, no interaction with the general public (Tr. 32, 34 Finding 5). See 20 C.F.R. §§ 416.920(e), 416.945. At step four, the ALJ found that Plaintiff proved she was unable to do any past work (Tr. 32, 34 Finding 6). See 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f). At step five, relying upon vocational expert testimony, the ALJ found that Plaintiff could perform other work in the national economy existing in significant numbers, as represented by: assembler (sedentary, unskilled, 450,000 jobs nationally, 6,000 jobs statewide, and 2,600 jobs countywide)(Tr. 33, 34 Finding 11). See 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g). Thus, the ALJ concluded Ms. Fortune was not disabled.

**A. The ALJ properly weighed Ms. Fortune's testimony**

The case, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority on evaluating plaintiff's subjective complaints. Bunnell requires the ALJ findings to be properly supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)). An ALJ may reject a claimant's subjective complaints, if the claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) However, as further explained in

Fair v. Bowen, *supra*, and Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferrable to a work environment where it might be impossible to rest periodically.

Here, plaintiff raises the issue of whether the ALJ erred in finding plaintiff's testimony not credible. After reviewing the ALJ's decisoin and the administrative record, the court finds that the ALJ properly weighed plaintiff's credibility. The ALJ stated in her opinion:

> I find the claimant's allegations regarding her limitations and ability to work not entirely credible. An Administrative Law Judge can reject the claimant's testimony about the severity of his symptoms by offering specific, clear, and convincing reasons (*Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996)). At the hearing, I noted that the clamant moved without difficulty, did not seem depressed, and demonstrated no pain behavior. Her unpersuasive appearance and demeanor while testifying at the hearing is a factor influencing the conclusions reached in this decision. However, it is emphasized that these observations are only one among many being relied on in reaching a conclusion regarding the claimant's credibility. Her symptoms are not supported by the records as a whole (Social Security Ruling 96-4p). She underwent surgery for her left ankle injury (Exhibit 1F) and subsequent screw removal procedure (Exhibit 9F), which certainly confirms that her ankle symptoms were genuine. While that fact would normally weigh in her favor, it is offset by the fact that the record reflects that the surgeries were generally successful in reducing her symptoms (Exhibits 1F, 9F, 11F, 15F, p. 9 and 16F, pp. 1-2). Although she is scheduled for another surgery, she is still able to weight-bear and ambulate effectively enough for sedentary to light activities. Her chronic low back pain is due to lumbar disc bulges but is not so severe as to preclude all work activity (Exhibit 14F and 24F). Despite the relatively serious physical problems reported by the claimant, treating as well as examining physicians found no or only mild objective findings and observed no major difficulty with functioning during the examinations. The overall medical evidence of record does not support the claimants allegations of debilitating pain. She has not provided convincing details regarding factors which precipitate the allegedly disabling symptoms, claiming that the symptoms are present "constantly" or all of the time. These discrepancies cast some doubt on the sincerity of the clamant's pain allegations.
>
> There are other factors which undermine the claimant's credibility. Despite these allegations of "constant" disabling symptoms, she has not been completely compliant with the recommended treatment. She has not followed through with mental health treatment, was uncooperative during evaluation at times, frequently no-showed for treatment and medication appointments, and has not stopped smoking despite a history of asthma and being advised to quit (Exhibit 9F, 12F, p. 5; 16F, p.1 and 17F). Her subjective pain complaints and allegations regarding her capability to perform activities of daily living and work-related activities are out of proportion to any physical findings and without clinical or laboratory findings. She states that she cannot do anything because of her pain and depressive symptoms, a description so extreme as to appear implausible. But she also stated that she could watch television and read (Exhibit 5F) and had a few really close friends a well as a boyfriend (Exhibits 4E, 5E, 2E, and 8F, pp. 3-12). It is apparent that she is engaging in a somewhat normal level of daily activity, social interaction, and activities that require concentration. The claimant has a very poor work history both before and after the alleged onset date (Exhibit 3D), which raises a question as to whether her continuing unemployment is actually due to her alleged impairments. Despite the allegations of symptoms and limitations preventing all work, the record also reflects that the claimant went on a vacation since the alleged onset date (Exhibit 11F, p.3). Although a vacation and a disability are not necessarily mutually exclusive, the claimants's decision to go on a

>vacation tends to suggest that the alleged symptoms and limitations may have been overstated. The records from BHR (Exhibits 8F and 17F) and the GAF score of 40 by the ARNP, Br. Bushue (Exhibit 17F, pp.1-5) are discounted because they are not from acceptable medical sources including social workers and therapists. The GAF score of 41 by Dr. Russell (Exhibit 5F) is explained given that the claimant was actively abusing alcohol at the time of the assessment. Moreover, Dr. Russell specifically stated that the claimant was expected to significantly improve within 12 months with treatment and medication. The only other residual functional capacity assessments in the file are by DDS (Exhibits 7F and 13F) and Ms. Armstrong (Exhibit 12F, p. 6) who both essentially found that the claimant could exertionally perform light work with some moderate non-exertional limitations. I concur with these assessments (Social Security Ruling 96-6p).
>
>The claimant has been prescribed and has taken appropriate medication for her impairments, which weighs in her favor, but the medical records reveal that the medication has been relatively effective in controlling her symptoms. However, there is a significant issue of drug-seeking behavior. She was receiving pain medications from various providers at the same time. Once her treating physician refused to refill her pain medication prescriptions (Exhibit 20F), she began frequenting various emergency rooms. From September 2003 to December 2003, she went to the emergency room on seven different occasions complaining of severe debilitating pain for which she had no medications (Exhibits 21F, 22F, 23F, 24F, and 25F). It is noted that she alternated her emergency room visits in different hospitals in Tacoma and Olympia, never informing the doctor that she had recently been to another emergency room. She even went to different emergency rooms on the same day and received pain medications (Exhibit 22F, p.1 and 23F). She was repeatedly given prescriptions for Percocet and Vicodin even though she claimed Vicodin did not help her pain (Exhibit 22F, p.2). Although the claimant adamantly denied alcohol abuse at the hearing, the medical evidence of record indicates otherwise (Exhibit 5F and 17F, pp. 1-5). The issues of her drug-seeking behavior and probable alcohol abuse raise serious concern about her overall veracity and credibility as well as her non-compliance with recommended treatment. For the reasons as stated above, I find the claimant not entirely credible and that the symptoms she describes are not sever enough to preclude employment (Social Security Rulings 96-3p and 96-7p).

Tr. 30-31.

Substantial evidence in the record supports the ALJ's analysis. For example, the record indicates Ms. Fortune did not follow through with mental health treatment (Tr. 252-53), was uncooperative at times, she failed to show up for appointments and did not stop smoking despite doctors orders (Tr. 30, 163, 228, 253, 264, 279). The record further supports the ALJ's finding that Ms. Fortune's credibility is undermined due to drug-seeking behavior. On September 18, 2003, plaintiff received a prescription for Percocet (Tr. 317). Two days later, on September 20, 2003, Plaintiff went to a new emergency room, this time at Tacoma General Hospital (Tr. 331). She was assessed with chronic back pain and got another prescription for Percocet (Tr. 331). On October 6, 2003, she went to yet another emergency room Columbia Capital Medical Center, and doctors there again prescribed Percocet (Tr. 348-49). Ms. Michaels gave her another prescription for Percocet, on October 18, 2003 (Tr. 315). On October 27, 2003, Plaintiff went back to

REPORT AND RECOMMENDATION
Page - 5

1 Tacoma General and obtained another prescription for Percocet (Tr. 344-45).

2 **B. The ALJ properly weighed the medical evidence in the record**

3 The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, plaintiff contends the ALJ erroneously rejected the opinions of Dr. Wingate and Dr. Russell, regarding the severity of the limitations caused by plaintiff's mental illness. The ALJ discredited Dr. Russell for the reasons discussed above. With regard to the opinions of Dr. Wingate, the ALJ wrote:

> Terilee Wingate, Ph.D. completed a DSHS psychological evaluation check list form on October 17, 2001 (Exhibit 2F). The claimant's symptoms included moderate suicidal trends, verbal expression of anxiety or fear, verbal and/or physical expression of anger, social withdrawal, paranoid behavior, and physical complaints. She had marked depressed mood and auditory hallucinations. She adamantly denied any drug or alcohol problem. She stated that she had trouble remembering things and no longer had any hobbies or interests. She was socially withdrawn and suspicious of others. Dr. Wingate diagnosed a recurrent major depressive disorder and psychosis NOS. With regard to cognitive factors, she opined that the claimant was moderately limited in her ability to: understand, remember, and follow complex instructions; learn new tasks; exercise judgment and make decisions; and perform routine tasks. With regard to social factors, she opined that the claimant was moderately limited in her ability to relate appropriately to co-workers and supervisors and markedly limited in her ability to interact appropriately in public contacts, respond appropriately to and tolerate the pressures and expectations of a normal work setting, and control physical or motor movements and maintain appropriate behavior. She opined that the claimant would be unable to return to work for 6 to 9 months to several years. I note that this check list form was based entirely on the claimants's self report of symptoms to the doctor. There is no evidence that Dr. Wingate reviewed any medical records or performed any psychological testing. For these reasons, I give the report little weight.

Tr. 24-25.

1  The medical evidence in the record as a whole, supports the ALJ's finding that plaintiff is not
2  disabled to the degree opined by Dr. Wingate and Dr. Russell, and the ALJ reasonably relied on other
3  medical evidence to support this conclusion. As noted above, the ALJ specifically agreed with the medical
4  opinions and residual capacity assessments provided by Dr. Janis Lewis, Bruce Eather, (Tr. 171-187); and
5  Dr. Hoskins (Tr. 237- 242). Dr. Lewis and Dr. Eather found plaintiff suffered from an Affective Disorder
6  causing some moderate limitations, but not disabling. Dr. Hoskins report indicated Ms. Fortune was
7  physically capable of performing work. In sum, the ALJ properly discredited the disability opinions given
8  by Dr. Wingate and Dr. Russell and relied on the opinions provided by Drs. Lewis, Eather, and Hoskins to
9  support her residual functional capacity findings.

10 **C. The ALJ properly concluded that Ms. Fortune is capable of performing work as an assembler**

11  At step-five the ALJ must determine whether or not a claimant is capable of performing other work
12  in the national economy. As noted above, after finding plaintiff could not return to any type of former
13  employment, the ALJ found that Plaintiff could perform work as an assembler (sedentary, unskilled,
14  450,000 jobs nationally, 6,000 jobs statewide, and 2,600 jobs countywide)(Tr. 33, 34 Finding 11). See 20
15  C.F.R. §§ 416.920(a)(4)(v), 416.920(g). The ALJ specifically relied on the testimony of a vocational
16  expert to support her conclusion. Tr. 33.

17  Plaintiff argues the ALJ's hypothetical(s) posed to the vocational supporting her decision were
18  incomplete. Plaintiff's argument it based on the contention that the ALJ improperly weighed the medical
19  evidence and improperly considered plaintiff's credibility. As noted above, the ALJ did not err when he
20  considered either the medical evidence or plaintiff's statements of total disability. Accordingly, the
21  hypotheticals, which are accurately based on the ALJ's analysis of plaintiff's credibility and residual
22  functional capacity, are properly supported by the record, and the ALJ properly relied on the vocational
23  expert's testimony.

24                             CONCLUSION

25  Based on the foregoing, the Court should AFFIRM the administration's decision. Pursuant to 28
26  U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10)
27  days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file
28  objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140

REPORT AND RECOMMENDATION
Page - 7

(1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **December 23, 2005**, as noted in the caption.

DATED this 1st day of December, 2005.

>   */s/ J. Kelley Arnold*
>   J.  Kelley  Arnold
>   U.S. Magistrate Judge